Jeremy L. Bordelon, OSB No. 160789
jeremy@evergreendisability.com
Evergreen Disability Law
465 Northeast 181st Ave., No. 500
Portland, Oregon 97230
(503) 888-9331

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| NORMA JEAN STEPHENS, | Civil No. 3:20-cv-00075-SI |
| Plaintiff, | PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR JUDGMENT ON THE RECORD (FRCP 52), RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| STANDARD INSURANCE COMPANY, | |
| Defendant. | Oral Argument (telephonic) Requested |

Plaintiff moved for judgment under Federal Rule of Civil Procedure 52(a)[1], and Defendant responded in opposition, while simultaneously moving for Summary Judgment[2]. Plaintiff respectfully submits the following combined reply re: her own motion and response to Defendant's motion.

**Structural Conflict of Interest and Expert Bias**

Standard argues that the Court should not take much, if any, notice of its financial conflict of interest in this case, nor of the bias of its experts. But under the abuse of discretion standard of review, the Court is required to do exactly that. *Salomaa v. Honda*

---

[1] Ct. Doc. #13.
[2] Ct. Doc. #17.

PLAINTIFF'S RESPONSE/REPLY BRIEF        1

*Long Term Disability Plan*, 642 F.3d 666, 674 (9th Cir. 2011). The Court has before it several indications of how that conflict of interest influenced Standard's claims-handling, and its ultimate decision to deny this claim. That evidence should result in a high degree of skepticism on Standard's denial decision.

<u>*Direct evidence of financial conflict in the claim file*</u>

The bare fact that an administrator both decides claims and funds claims may not, without more, lead to heightened scrutiny of an ERISA claims decision. *See, e.g., Robertson v. Standard Ins. Co.*, 139 F. Supp. 3d 1190 (D. Or. 2015). Here, however, there is more. There is the fact that Standard describes Ms. Stephens's claim as a "**big hitter**[]," - an expensive claim requiring further review. AR 0763 (emph. added). That review involved several pointed questions about the cost of Ms. Stephens's claim, and when the claims handler projected being able to cut Ms. Stephens off, such as "How serious is the diagnosis? Do you think the member will ever go back to work? If so when? Will there be an SS offset? Have they had any improvements in their condition since last year?" *Id.* Finding statements of this kind in the claim file is rare, but it shows in this case how Standard allowed its financial conflict to influence its claims-handling behavior.

<u>*Failure to order an in-person examination*</u>

That claims-handling behavior included choosing not to order an in-person exam of Ms. Stephens, something which two of its four[3] consulting doctors recommended. Standard argues in its brief that relying on file reviews alone is typical, and is "particularly

---

[3] Drs. Shulsinger and Wolff both stated that in-person exams may be needed to fully evaluate Ms. Stephens's condition, given that there was so little objective evidence to explain her pain complaints. AR 261, 385.

PLAINTIFF'S RESPONSE/REPLY BRIEF          2

understandable" in subjective pain cases. Def't's Brief at 23-24 (*citing Martin v. Aetna Life Ins. Co.*, 223 F. Supp. 3d 973 (C.D. Cal. 2016)). But the *Martin* case involved a policy which specifically required objective medical evidence, and the claimant there had a hand condition which was entirely susceptible to such evidence. The administrator in *Martin* properly found that the existing exams by Martin's treating doctors did not support his claim, and so there was no reason to conduct an independent exam. *Id.* at 986.

The same cannot be said here. The Standard insurance policy in this case contains no "objective evidence" requirement. And to impose one on a condition such as Ms. Stephens's would be unreasonable, in any event. As to Standard's argument that an in-person exam would be useless in a case lacking objective evidence, quite the opposite is true. In such cases, an in-person exam is *more* important, not less, because if the paper medical records will not reveal the origins of a patient's complaints, all we have are the observations of trained medical experts to determine the legitimacy and severity of those complaints. *See Jahn-Derian v. Metro. Life Ins. Co.*, 2016 WL 1355625 (C.D. Cal. Mar. 31, 2016) (rejecting MetLife's argument that "nothing would have been gained by having their doctors examine Jahn-Derian, as she would presumably repeat the same list of subjective ailments that she told her treating physicians.") (*citing Lavino v. Metro. Life Ins. Co.*, 2010 WL 234817 (C.D. Cal. 2010) (finding failure to conduct an exam especially important "with respect to conditions that are not susceptible to objective verification"); *Salomaa*, 642 F.3d at 676 ("The medical record by physicians who actually examined Salomaa is entirely one sided in favor of Salomaa's claim. The plan rejected its opportunity to see if there was another side.")).

So has Standard rejected its opportunity to determine the same in Ms. Stephens's case. Again, despite recommendations from two of its reviewers that an in-person exam may be needed in a case such as this, where Ms. Stephens's condition could not be fully captured on paper, Standard chose not to do so. That choice should be considered when the Court decides whether Standard's financial conflict of interest influenced its behavior in this case. If money was no object, it seems reasonable that an unbiased administrator would have ordered an exam in this case. As such, Standard's decision not to do so should be considered evidence of an abuse of discretion.

<u>Bias of Dr. John Hart against subjective pain complaints</u>

The impact of Standard's conflict of interest, and the bias of its expert, can also be seen in the fact that it chose Dr. John Hart to perform the final review of this claim, and relied on him in support of Standard's final claim denial.

Relying on a file review by Dr. John Hart in a subjective pain case such as this is basically guaranteeing a claim denial, a fact which Standard well knew, based on Dr. Hart's prior deposition testimony. That testimony reveals that there are almost no circumstances in which he would find a person disabled from sedentary work by subjective pain complaints, no matter what underlying conditions they have, and no matter what their treating physicians say.[4] He wants what cannot exist, which is concrete proof of pain. For Standard to require that, or to indirectly require that by relying on a reviewing doctor who uses that as his personal standard, is arbitrary and capricious. *Salomaa*, 642 F.3d at 678

---

[4] *See* Plaintiff's Principal Brief (Ct. Doc. #13) at 21-23.

PLAINTIFF'S RESPONSE/REPLY BRIEF              4

("We now establish as holding what was then *dicta*, that conditioning an award on the existence of [objective] evidence that cannot exist is arbitrary and capricious.").

Standard argues that Plaintiff has misconstrued how Dr. Hart's opinions were treated in the cases she cited in her principal brief, *Robertson, supra*, and *Armani v. Northwestern Mutual Life Ins. Co.*, 840 F.3d 1159 (9th Cir. 2016). Plaintiff stands by her characterizations. In *Robertson*, it is true that this Court declined to apply "heightened scrutiny" based on plaintiff's arguments about Dr. Hart's possible financial conflict of interest. However, the Court did find, on review of the substance of Dr. Hart's file review, that his report was "conclusory," and did not explain why his opinion differed from the treating physician's. 139 F. Supp. 3d at 1207. In *Armani*, the Ninth Circuit did not directly criticize Dr. Hart's opinion that the claimant was capable of sedentary work "without limitations", but found that the insurer abused its discretion in relying on that opinion when the evidence showed that the claimant was incapable of more than four hours of sitting per day.[5] Far from "surprising," Plaintiff's reliance on these decisions is entirely rational. In both of these cases, decisions relying on Dr. Hart's unreasonable, unsupported opinions rejecting subjective pain complaints were overturned.

<u>Failure of Standard to adequately rebut evidence of conflict</u>

As the party claiming a conflict, Plaintiff acknowledges that she has the burden of producing evidence that a conflict of interest influenced Standard's behavior. *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 902 (9th Cir. 2016). Plaintiff submits that she has met that burden by showing Standard's description of her claim as a financial "big hitter," by its

---

[5] Plaintiff made a similar argument regarding sitting in her principal brief, at pages 27-28. Defendant made no response to this argument whatsoever.

PLAINTIFF'S RESPONSE/REPLY BRIEF              5

failure to "wall off" doctors and claims staff from financial information[6], by its failure to conduct a physical exam when one was recommended by its consultants, and by relying for its final denial on a doctor which Standard knew was unlikely to ever accept subjective pain complaints as disabling.

Having brought all of this evidence of the influence of Standard's conflict of interest, the burden shifts to Standard "to produce evidence that there is no conflict." *Demer*, 835 F.3d at 902. Standard has done no such thing. It did not even address the "big hitter" comment from the claim file in its response brief. It did not address Dr. Hart's deposition testimony in its merits brief, instead choosing to do so only in its motion to strike. Standard "could have maintained records of its reviewers' findings on claims to show their neutrality in practice, but it did not." *Demer*, 835 F.3d at 904. It could also have brought evidence to show what proportion of these doctors' annual revenue comes from work for Standard, but it did not do that, either. *Id.* Accordingly, the Court should apply a high degree of skepticism to Standard's decision to deny this claim.

## Medical Evidence Supporting Plaintiff's Claim

While Ms. Stephens's pain complaints may be subjective, and not entirely amenable to a clear and singular explanation, her medical and surgical history is well-documented, and clearly supports her complaints. Every doctor who has examined her in person, both treating and consulting, has agreed that her pain is genuine, and would prevent any work. While Standard argues that its four file-reviewing physicians agreed that Ms. Stephens

---

[6] *See* Plaintiff's Principal Brief, Ct. Doc. #13, at 18-19.

could perform sedentary work, their opinions are far from unitary. Overall, Ms. Stephens's claim is well-supported medically, and Standard's denial should be overturned.

### *Medical history supporting Ms. Stephens's pain complaints*

Standard argues that Ms. Stephens's complaints are subjective, and indeed in a sense they are, but that does not mean they are without medical basis. She had an emergency hysterectomy due to a ruptured uterine cyst, and complained of increasing pain thereafter. AR 0839-40. Her doctors surmised, not unreasonably, that her pain complaints were due to internal scarring, both in her abdomen and extending backwards to her spine. AR 0422. She tried a second surgery to remove abdominal adhesions, to no avail. AR 0516. Her doctors remain under the working theory that her internal scarring causes both her abdominal pain and her spinal symptoms, and no evidence contradicts that theory.

### *Treating, examining physician support*

With this medical background in mind, the only two doctors to have examined Ms. Stephens in person have opined that her pain would prevent any work. Treating pain management physician Dr. Donadio stated that she would be "unable to work regardless of work modifications," and stated in his remarks section that his patient "is totally and permanently disabled." AR 0550. Consulting pain management specialist Dr. Shaw said there was no "magic bullet" that would fix Ms. Stephens's multi-factorial pain (AR 0474) and told her that she needed to "get use[d] to a new way of life." (AR 0108).

### *Medical file reviewers' mixed opinions*

Standard presents its four file reviewers' opinions as if they all sang with one voice, stating clearly that Ms. Stephens was capable of full-time sedentary work, no more, no less.

This is far from the case. Drs. Shulsinger and Glassman did find her capable of sedentary work, but they offer little to explain why they stopped there, rather than accepting Ms. Stephens's complaints and her doctor's opinions entirely. Dr. Shulsinger stated an FCE or an IME would be needed to really tell what Ms. Stephens was capable of. AR 385. Dr. Wolff also stated an exam was needed, and said that he would have found Ms. Stephens disabled from even sedentary work, were it not for her "motivation" to work. After speaking with Ms. Stephens's treating physician, and as the only file reviewer to do so, Dr. Wolff later changed his opinion, and stated that he did agree Ms. Stephens was disabled, even from sedentary work. AR 0221-22. Dr. Hart stated that Ms. Stephens would be capable of sedentary work, but also stated that she was "capable of standing or walking at a frequent level." He did so without addressing the fact that she has prescriptions for a wheelchair and a walker, and without addressing the impact of her pain and pain medications on her cognition. He also offered no explanation for why Ms. Stephens's subjective complaints should not be fully credited, although his deposition suggests that it is his blanket medical opinion that such complaints would rarely prevent sedentary work. Overall, these file reviewing physician reports do little to support Standard's denial, and in some respects, actually support Plaintiff's claim.

     Overall, while Ms. Stephens's pain complaints are subjective, there is nothing inherently questionable about that, particularly when the insurance policy at issue does not require "objective evidence." In any event, there is objective evidence of underlying conditions and a medical history which could certainly cause pain in the locations and of the severity Ms. Stephens complains of. Her prescription regimen supports the seriousness

PLAINTIFF'S RESPONSE/REPLY BRIEF         8

of this pain. Her personal statements regarding her daily activities and dysfunction support not just her pain complaints, but also the fact that she is unable to walk or sit for long periods, and that she spends much of her day in bed. Nothing Standard has brought forth in this case does anything to contradict any of that evidence, and so its denial should be overturned.

          Respectfully submitted,

BY:    *s/Jeremy L. Bordelon*
       Jeremy L. Bordelon, OSB No. 160789

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 29, 2021, he filed the foregoing document with the Clerk of Court using the Court's ECF system. Notice of this filing will be delivered to counsel for all parties shown on the ECF system's Notice of Electronic Filing. The undersigned will mail a copy of the foregoing to any parties required to receive notice not shown on the NEF.

BY:    *s/Jeremy L. Bordelon*
       Jeremy L. Bordelon, OSB No. 160789