**Andrew Altschul, OSB No. 980302**
E-mail: andrew@baaslaw.com
BUCHANAN ANGELI ALTSCHUL
& SULLIVAN LLP
921 SW Washington St., Suite 516
Portland, OR 97205
Telephone: (503) 974-5015
Facsimile: (971) 230-0337

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **NORMA JEAN STEPHENS,** <br><br> Plaintiff, <br><br> v. <br><br> **STANDARD INSURANCE COMPANY,** <br><br> Defendant. | Civil No. 3:20-CV-00075-SI <br><br> **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)** |

## I. INTRODUCTION

Defendant Standard Insurance Company ("Standard") reasonably concluded that Plaintiff Norma Jean Stephens' ("Stephens") medical records do not support a finding that her pain is so severe that she is incapable of performing the material duties of Any Occupation. Stephens' attempts to suggest that the inherent structural conflict impacted this

Page 1 –  **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)**

decision are unavailing. Nothing she identifies supports weighing the conflict with greater scrutiny nor, more importantly, undermines the reasonableness of Standard's conclusion.

## II. ARGUMENT

### A. The Inherent Structural Conflict Did Not Impact This Decision

The innate reasonableness of Standard's decision in this matter is perhaps best demonstrated by the hollowness of Stephens' dire efforts to convince this Court that Standard's routine conflict of interest had a negative impact on its decision-making; a "Hail Mary" attempt to drum up doubt about a well-founded decision, even if it is also one where reasonable people could disagree. In her Opposition brief, ECF 18, she reiterates three baseless arguments in support of the inherent conflict's alleged influence: (1) Stephens claims the Administrative Record suggests some sort of financial motivation to close the claim; (2) Stephens claims the fact that Standard based its decision on Stephens' medical records rather than insisting she undergo an additional in-person exam was improper; and (3) Stephens claims that Standard's use of Dr. John Hart as an expert is inherently biased. All these arguments are lacking in merit.

> **1. There is nothing in the record to suggest a financial motivation impacted the decision of Stephens' claim.**

Stephens is under the mistaken and unsupported impression that the decision-makers, the claims analyst, and the reviewing physicians would somehow be financially motivated to find against Stephens. There, however, is nothing in the record to support that conclusion. Every reviewing physician explained that their opinion was based exclusively on their best medical opinion and that they were paid based on their time, not on their opinion. (AR 93, 128, 261-62, 479-80). And Stephens has offered up nothing to suggest that the claims

Page 2 – **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)**

analyst who decided the claim had any financial motivation to do anything other than reach what they believed was the best accurate decision in this matter.

Stephens' reference to an email that uses the phrase "big hitter" is a frivolous red herring that Standard did not think warranted a response in its initial briefing. On June 16, 2016—six months after Standard had *approved* Stephens' Own Occupation claim (AR 694-97)—an account manager, working with a sales representative on pricing the renewal of Stephens' former employer's group policy, asked some generic questions about three approved claims from this employer, including Stephens, that the account manager jointly characterized as "big hitters." (AR 763). Contrary to Stephens' misplaced inference of impropriety, all the questions are ones that Standard *must* ask to appropriately administer a claim: "Do you think the member will ever go back to work? If so, when? Will there be an SS [Social Security] offset? Have they had any improvements in their conditions since last year?" (AR 763). And the answers are all relevant information for Standard to appropriately price the contract renewal. There is nothing to suggest these questions somehow motivated the claims analyst to change the outcome of the claim. Indeed, after a routine review that same summer, Standard confirmed Stephens remained unable to perform her Own Occupation and she received benefits for the remaining year of her Own Occupation Disability period. (See Standard's Opening Brief, ECF 16, at 11-12).[1]

---

[1] The additional absurdity of Stephens' argument that knowing the benefit value or reserve amount is tantamount to financial pressure was addressed in Standard's Opening Brief (ECF 16 at 19-20).

Page 3 – **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)**

## 2. Standard had No Obligation to Conduct an In-Person Exam.

"ERISA does not require a plan administrator to conduct an IME." *Petrusich v. Unum Life Ins. Co. of Am.*, 984 F. Supp. 2d 1112, 1122–23 (D. Or .2013). This is true even in subjective pain cases. *Jordan v. Northrup Grumman Corporation Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2003) ("where the applicant's physicians depend entirely on the patient's pain reports for their diagnoses, their *ipse dixit* cannot be unchallengeable.") (overturned on other grounds in *Montour v. Hartford Life & Accident Ins. Co.,* 588 F.3d 623 (9th Cir. 2009)); *Martin v. Aetna Life Insurance Co*, 223 F.Supp.3d 973, 986 (SD CA 2016) (finding no abuse of discretion in chronic pain case where reviewing physician "properly viewed [treating physician's] findings as a whole, weighing Plaintiff's subjective complaints against the lack of objective tests substantiating Plaintiff's claims."); *Safavi v. SBC Disability Income Plan*, 493 F. Supp.2d 1107, 1118 (CD CA 2007) ("Plaintiff essentially argues that Defendant should not be allowed to take the lack of objective evidence into account in making its decision, but instead should rely only on Plaintiff's subjective reports of pain and her doctors' opinions that she was disabled from performing any job. However, an administrator is not required to limit its review in this way.")

Stephen's attempt to distinguish *Martin* because the plan at issue there required "objective evidence" is off the mark. Neither *Martin* nor *Jahn-Derian v. Metro. Life Ins. Co.*, 2016 WL 1355625 (C.D. Cal. Mar. 31, 2016), also cited by Stephens in support of this mistaken proposition, turn on the plan's requirement for objective medical evidence. Indeed, *Jahn-Derian* was a *de novo* review case where the plaintiff prevailed, not because

Page 4 –  **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)**

the insurance company did not conduct an independent examination, but because the court found "plaintiff's pain allegations are supported by objective medical evidence." *Id* at *8.

In addition, while the Plan at issue in this instance does not contain the phrase "objective evidence," it does state unequivocally that "for claims of disability due to conditions other than Mental Disorders, we may require proof of physical impairment that results from anatomical or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." (AR 34). And "[w]hile the diagnoses of chronic fatigue syndrome … may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis." *Boardman v. Prudential Ins. Co. of Am*., 337 F3d 9, 17 (1st Cir 2003). Here, the issue has never been whether Stephens suffers pain—everyone agrees she does—but whether that pain is severe enough to prevent her not only from performing her Own Occupation, but Any Occupation. Stephens, however, has offered up nothing beyond the conclusory statements of her treating physician based exclusively on her subjective reports to support that opinion. Standard's conclusion that that is not good enough is reasonable. *Jordon*, 370 F.3d at 880.

And finally, in the handful of times Stephens visits Dr. Donadio from 2015 through 2017, Dr. Donadio's notes are sparse, vague and repetitive. (*See. e.g.,* AR 261 ("the notes are repetitive without any documentation as to future diagnostic or therapeutic interventions."); AR 127 (" There is no indication on any of the physical examinations from any of the doctors over the last three years of significant abnormal physical findings.")) "Under such circumstances, a paper review by a physician retained by the plan administrator

Page 5 – **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)**

may be more reliable than the opinion of a treating physician." *Shaw v. Life Ins. Co. of N. Am.*, 144 F.Supp.3d 1114, 1130 (CD Cal 2015). *See also Tuttle v. Standard, Ins. Co.,* 459 F. Supp. 2d 1063, 1072 (W.D. Wa. 2006) ("Standard was not required to give special weight to [claimant's] treating physicians, particularly where their opinions were mere unsupported conclusions."); *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir.2006) ("In such [paper] file reviews, doctors are able to fully evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation. It is reasonable, therefore, for an administrator to rely on its doctors' assessments of the file and to save the plan the financial burden of conducting repetitive tests and examinations").

### 3. Dr. John Hart is Not Biased.

Stephens' desperation is most apparent in her shameless and misguided efforts to demonize Dr. John Hart. Indeed, she boldly (and falsely) asserts that "relying on a file review by Dr. John Hart in a subjective pain case such as this is basically guaranteeing a claim denial." (ECF 18 at 4). But Stephens has not identified one decision where a court has found Dr. Hart bias. Indeed, as previously noted, in *Robinson v Standard Ins. Co.*, 139 F.3d 1190 (D. Or 2015), one of the two cases she cites, the court expressly rejected that argument. (ECF 16 at 20; ECF 18 at 5 (Stephens' conceding *Robinson* rejected plaintiff's request to apply a heightened standard of review despite claims of bias by Dr. Hart)).

Instead, Stephens argues the court should find Dr. Hart automatically toxic because

Page 6 – **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)**

in the two decisions she cites, Dr. Hart's conclusions were not upheld by the court.[2] (ECF 18 at 5). That, however, is not a basis to find bias. If it were, then every District Court judge that has ever been reversed by an appellate court would be equally biased. *See*. e.g., *Bergman v. UNUM Life Ins. Co. of Am.*, 3:17-CV-00245-PK, 2018 WL 3341209, at *5 (D Or June 14, 2018) ("Plaintiff's citation to decisions from 2007, 2008, and 2012 discussing Defendant's conduct in handling claims, without more, does not show bias in addition to Defendant's inherent structural conflict of interest."), report and recommendation adopted, 3:17-CV-245-PK, 2018 WL 3340868 (D Or July 6, 2018).

Moreover, for every case where a court did not uphold Dr. Hart's findings (even when his opinion was not an issue), there is also a case where a court affirmed his opinions. In *Williams v. Standard Insurance Co.,* 1:15-cv-00416-DAD-EPG, 2017 WL 1398819 (ED CA April 18, 2017), for example, in a *de novo* review case, the court agreed with Dr. Hart that "plaintiff's self-assessment of his inability to perform any work is contradicted by the medical and other evidence of the record." *Id*. At *10.[3] And in *Bryan v. Standard Insurance Co*, 2:15-cv-199 JCM (GWF), 2016 WL 3459797 (D. Nev June 16, 2016) the court found it was reasonable for Standard to rely on Dr. Hart's critique of a Functional Capacity Examination in a subjective pain case.[4]

---

[2] As previously noted, the court in *Armani v. Northwestern Mutual Life Ins. Co.*, 840 F.3d 1159 (9th Cir. 2016), did not discredit Dr. Hart's opinion. The decision turned on the meaning of a contract term unrelated to his opinion. *See* ECF 16 at 19.

[3] Significantly, the plaintiff also tried, unsuccessfully, to introduce Dr Hart's unrelated deposition testimony in that case. The court found it irrelevant. *Id* at *5.

[4] These two cases, along with the two cases cited by Stephens, *Robinson* and *Armani*, are the only ERISA cases defense counsel was able to find where Dr. Hart was a reviewing physician. This scant number of cases also undermines any inference that Hart is an overused expert who opines against the claimant in every case he sees.

Page 7 – **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)**

Most importantly, Stephens has failed to show how Dr. Hart's past conduct—regardless of how you view it—impacted *this case*. *Montour v. Hartford Life & Acc. Ins. Co.,* 588 F.3d at 630 , 631 ("The weight the court assigns to the conflict factor depends on the facts and circumstances of each particular case…adjusting the weight given that factor based on the degree to which the conflict appears improperly to have influenced a plan administrator's decision.") Three other reviewing physicians reached the exact same conclusions as Dr. Hart—the severity of Stephens' pain is not explainable by her medical records and there is no basis to support a finding that she should not perform Any Occupation.

### B. Standard Did Not Abuse Its Discretion

Regardless of what, if any, weight the court gives the inherent structural conflict, the standard of review remains abuse of discretion, and Standard did not abuse it. Stephens misstates her own doctors' conclusions. Her doctors did not conclude her pain stems from internal scarring from surgery. Her surgeon found "evidence of adhesions of the left peritoneal wall to the colon, but Dr. Brass did not feel that this was the cause of [Stephens'] pain." (AR 479). Indeed, her treating physicians concede they do not know why she is claiming to experience the level of pain she says she is experiencing. *See* e.g. AR 127 ("multiple doctors note that there is no obvious etiology of the claimant's pain and there is no documentation of an anatomical or physiologic etiology of the claimant's pain syndrome"); AR 384 ("Her primary pain specialist, Dr. Donadio, states that he is not sure what the etiology of the pain is").

Page 8 – **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)**

Stephens also misstates the opinions of two of Standard's reviewing physicians. None of them ever concluded Stephens was unable to perform a "sedentary" strength position. Instead, all four agreed that it was reasonable to conclude that Stephens may be unable to perform a "light" strength position. The two reviewers who looked at her file during her Own Occupation stage also suggested further information about her functional capacities would be helpful in better assessing Stephens' inability to perform light strength work should she claim such ongoing restrictions given the scant level of support for it. They rendered no opinion suggesting such a review would be necessary to conclude that she was capable of sedentary strength work.

Significantly, Stephens' condition did not change from 2013—when she was working—through 2017, but the definition of disability did. (AR 13, 19 (noting change in definition of disability after 24 months); AR 127 ("The claimants last day of work was approximately year and half after the onset of the pain. There is no indication that the claimants symptoms have increased over that time period and there is no record that indicates that the claimant was working with limitations and restrictions with this condition prior to her last day of work on June 3, 2015")). Standard's willingness to credit that while Stephens may have toughed it out from 2013 to 2015, she was nonetheless justifiably unable to do the light strength work that her Own Occupation required does not mean it must also find she cannot do Any Occupation, when as here, there simply is no evidence to support it. *Seleine v. Fluor Corp. Long-Term Disability Plan*, 409 Fed Appx 99, 100 (9th Cir 2010) ("We reject the contention that [the plaintiff] was entitled to 'any occupation' benefits merely because she was awarded 'own occupation 'benefits under the Plan in a prior action.

Page 9 –  **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)**

Because the definition of disability under the 'any occupation' standard is more stringent and covers a later time period, [the plaintiff's] entitlement to 'own occupation' benefits lacks any preclusive effect in this action.")

### III.  CONCLUSION

Standard's Motion for Summary Judgment, or in the alternative, its Cross-Motion for Judgment Pursuant to Fed. R. Civ. Pro 52(a) should be granted and Plaintiff's Motion for Judgment Pursuant to Fed. R. Civ. Pro 52(a) should be denied.

DATED: February 12, 2021        BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP

s/ Andrew Altschul
Andrew Altschul, OSB No. 980302
andrew@baaslaw.com
Telephone: (503) 974-5015
Attorneys for Defendant

# CERTIFICATE OF SERVICE

  I hereby certify that I caused to be served the foregoing **REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, ITS CROSS-MOTION FOR JUDGMENT PURSUANT TO FED. R. CIV. PRO 52(A)** on the following-named persons on the date indicated below in the manner indicated:

☐   mailing with postage prepaid

☐   hand delivery

☐   facsimile transmission

☐   email

☒   notice of electronic filing using the CM/ECF system

  Jeremy L. Bordelon, OSB No. 160789
  465 Northeast 181st Avenue, #500
  Portland, OR 97230
  jeremy@evergreendisability.com

DATED: February 12, 2021      BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP

                   s/ Andrew Altschul
                   Andrew Altschul, OSB No. 980302
                   Telephone: (503) 974-5015
                   Attorneys for Defendant